FILED

APR 3 0 2019

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.  19-CR-00038-RJL |
| | ) | |
| NAEEM TYAB, | ) | **UNDER SEAL** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT NAEEM TYAB'S PROFFER OF FACTS IN SUPPORT OF GUILTY PLEA

Pursuant to Federal Rule of Criminal Procedure 11, I, Naeem Tyab, declare under penalty of perjury the following.

1.        On or about August 30, 2009, I signed a contract on behalf of a company of which I was a co-founder and director ("Energy Company"), promising to pay Ambassade du Tchad, LLC $2 million if Energy Company obtained certain oil rights in the Republic of Chad ("Chad").  The true purpose of the contract and promised payment was to induce Mahamoud Adam Bechir ("Bechir"), the Ambassador for Chad to the United States and Canada, and Youssouf Hamid Takane ("Takane"), Chad Embassy's Deputy Chief of Mission, to misuse their official positions and use their influence with the government of Chad to assist Energy Company in obtaining oil rights in Chad.

2.        Along with a co-founder of Energy Company, I had previously met with Bechir and his wife, Nouracham Bechir Niam ("Niam").  Based on that meeting, I knew that the consulting services described in the contract with Ambassade du Tchad, LLC were not going to be performed, and that the money to be paid pursuant to the contract was intended as a bribe.

3.        On or about September 15, 2009, I signed a substantially similar contract on behalf of Energy Company promising to pay $2 million to a different entity, Chad Oil

1

Consultants, LLC, a company held by Bechir's wife, Niam, if Energy Company obtained certain oil rights in Chad, also for the purpose of inducing Bechir and Takane to misuse their official positions and use their influence with the government of Chad to assist Energy Company in obtaining oil rights in Chad. I knew that the services described in the contract were not going to be performed, and that the money to be paid pursuant to the contract was intended as a bribe.

4.       On or about September 24, 2009, I met with Bechir and other high-level Chadian government officials at the Ritz-Carlton Hotel in the District of Columbia regarding Energy Company's efforts to secure oil rights in Chad, which meeting was in furtherance of the corrupt offer, payment, and promise to pay Bechir and Takane.

5.       On or about October 1, 2009, I signed an Energy Company resolution issuing Energy Company shares to Bechir's wife, Niam, to a close relative of Takane, and to a third Chadian individual in order to induce Bechir and Takane to misuse their official positions and use their influence with the government of Chad to assist Energy Company in obtaining oil rights in Chad.

6.       In or around January 2011, at about the same time that Energy Company's wholly-owned subsidiary entered into a production sharing contract for oil rights with Chad, and after the prior contract with Chad Oil Consultants, LLC had expired, I signed another contract on behalf of Energy Company with Chad Oil Consultants, LLC promising to pay $2 million to Chad Oil Consultants, LLC for the purpose of inducing Bechir and Takane to misuse their official positions and use their influence with the government of Chad to assist Energy Company in obtaining oil rights in Chad. I knew that the services described in the contract were not going to be performed and that the money to be paid pursuant to the contract was intended as a bribe.

7.      On or about February 8, 2011, I forwarded an email I had received from Takane with account information for the payment of $2 million to a bank account in the District of Columbia in the name of Chad Oil Consultants, LLC held by Bechir's wife, Niam.

8.      On or about February 10, 2011, with my co-conspirators, I caused a wire transfer in the amount of approximately $1,999,990 to be sent from an escrow account in Canada to the District of Columbia bank account specified by Takane.

9.      I knew the purpose of the payments through sham consulting contracts and shares of Energy Company stock issued to nominees was to pay bribes to foreign officials, Bechir and Takane.

10.      I agreed to accomplish this plan with others, including a co-founder of Energy Company.

11.      I knew this plan and the actions related thereto were unlawful and done corruptly and willfully.

12.      In exchange for the bribes paid to Bechir and Takane, and through the efforts taken by Bechir, Takane and others on its behalf, Energy Company obtained business advantages, specifically, valuable oil rights in Chad from the government of Chad.

13. I held shares in Energy Company, which increased significantly in value after Energy Company obtained oil rights in Chad.

14. In total, I received the equivalent of $69.7 million from the sale of the shares in Energy Company I held in the name of Aura Oil Holdings and the equivalent of over $10.4 million for the shares held in the name of Century House Holdings, Ltd.  Of this amount, based on value of the shares soon after the January 2011 production sharing contract, approximately $27,632,612.61 was proceeds of the bribes paid to Bechir and Takane.

15. Upon the sale of my shares in Energy Company and continuing through on or about May 8, 2014, I caused numerous wire transfers of my share proceeds to be sent from a Canadian brokerage account to a bank account I beneficially owned.

16. Proceeds from the sale of my shares in Energy Company were deposited into and transferred to and through numerous bank and brokerage accounts, including accounts located in the United States.

17. In the course of investing the proceeds from the sale of my shares in Energy Company, I used a number of holding companies over which I exercised beneficial ownership and control.

18. I used the proceeds from the sale of my shares in Energy Company to make numerous subsequent purchases, investments, loans and other financial transactions, some in my own name and some through holding companies I owned and controlled.  In addition to those properties and assets referenced in Appendix A to the Cooperation Plea Agreement, proceeds from the sale of my shares in Energy Company were transferred to the entities, individuals, and accounts listed in Appendix B to the Cooperation Plea Agreement, among others.


Date: 4/30/19

Naeem Tyab
Defendant

/

/

/

/

/

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense and reviewed with my client and have discussed it with him fully. I concur in my client's agreement with and acceptance of this proffer.

Date: _4/30/19_

_____
Kenneth Wainstein, Esquire, Attorney for Defendant

Date: _4/30/19_

_____
A. Joseph Jay III, Esquire, Attorney for Defendant